## PICKETT v. SOUTHERN RY.—CAROLINA DIVISION.

1. TORT—RAILROADS.—THE SOUTHERN RY.—CAROLINA DIVISION—created by consolidating certain other railroad companies in this State, under act of 1902, page 1152, is liable for a tort committed by a constituent company before consolidation.

2. CHARGE.—Statement in charge that "you have the testimony as to that," is not a charge on the facts as used here, but an instruction to the jury, that they must determine the question of fact on that point.

3. PLEADINGS—WORDS AND PHRASES—WILFULNESS—PUNITIVE DAMAGES.—An allegation characterizing an act as "reckless," is equivalent to characterizing it as "wilful," and under such allegation pleader may ask for punitive damages.

4. RAILROADS—PASSENGERS.—A railroad company owes no duty to hold its train for a belated passenger after it has stopped at a regular station long enough to take on and let off passengers.

5. IBID.—WILFULNESS.—Statement of ticket agent to passenger "to go and get on the train" as it was moving off, under the circumstances here, cannot be construed as an intentional wrong, and will not support a verdict for punitive damages.

Before Jos. A. McCULLOUGH, special Judge, November, 1903.   Reversed.

Action by John A. Pickett against Southern Railway Co.—Carolina Division.   From judgment for plaintiff, defendant appeals.

*Messrs. W. C. Benet* and *E. M. Thomson,* for appellant, cite: *Consolidated roads are not liable for the tort sued here:* 64 S. C., 92; Code, 1902, 2050, 2051, 2052, 2053; 64 S. C., 92; 127 Fed. R., 606; 23 Stat., 1152; 17 Wall., 425; 100 U. S., 585. *As to charging on facts:* 47 S. C., 517; 5 S. C., 70; 14 S. C., 621; 17 S. C., 137; 19 S. C., 94; 25 S. C., 172; 28 S. C., 579, 255; 53 S. C., 67. *The allegation that the act was reckless does not charge a wilful tort:* 16 Ency., 392, 395; 60 S. C., 70; 54 S. C., 507; 62 S. C., 325.

*Messrs. Nelson & Nelson* and *Melton & Belser,* contra,

cite: *The lessor railroad company is liable for the torts of its lessee:* 25 S. C., 216; 28 S. C., 401; 35 S. C., 427; 41 S. C., 36, 285, 415; 43 S. C., 197; 63 S. C., 96; 27 S. C., 385; Code, 1902, 2050, 2051, 2052, 2053; 67 S. C., 181; 64 S C., 92; 32 S. C., 142; 23 Stat., 1152. *Principle governing construction of statutes:* 23 Ency., 1 ed., 297, 298, 302, 303, 319, 306, 307, 328, 329, 311, 315, 357, 477, 478, 407, 489, 482; Sedg. on St. and Con. L., 231; Endlich on Stats., secs. 113, 210, 205, 354; 127 U. S., 406; 16 Pet., 362; 109 U. S., 570; 96 U. S., 140; 8 Cranch, 109; 4 Ark., 410; 11 Cal., 333; 14 B. Mon., 342; 22 Mich., 322; 41 Mo., 460; 103 N. Y., 136; 99 Pa. St., 513; 105 Pa. St., 13. *Statement complained of is not charge on the facts:* 47 S. C., 488; 55 S. C., 414; 57 S. C., 474; 52 S. C., 438; 58 S. C., 373; 65 S. C., 169; 50 S. C., 427; 54 S. C., 605; 63 S. C., 376, 312, 557; 50 S. C., 381; 60 S. C., 160; 49 S. C., 488. *The allegation of recklessness will support a recovery of exemplary damages:* 29 S. C., 381; 57 S. C., 325; 60 S. C., 74; 61 S. C., 189; 65 S. C., 326; 52 S. C., 344; 51 S. C., 228, 253; 62 S. C., 325; 60 S. C., 48; 54 S. C., 509; 57 S. C., 478. *What acts will carry case to jury on question of exemplary damages:* 56 S. C., 95; 66 S. C., 528; 57 S. C., 254; 60 S. C., 57; 62 S. C., 325; 65 S. C., 93, 610, 440, 438, 521; 66 S. C., 77; 68 S. C., 98.

July 23, 1904. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, through the negligence and recklessness of the defendant. The allegations of the complaint, material to the questions presented by the exceptions, are as follows:

"4. That on the 27th day of December, 1901, the plaintiff went to said depot at St. Matthews for the purpose of securing transportation therefrom over said line of railroad to the said city of Columbia upon the regular passenger train thereon, which, according to the schedule then of force,

passed said depot at or about thirty-four minutes past 8
o'clock in the evening; that plaintiff reached said depot in
ample time to permit him to purchase his ticket and board
said train before it left said station; that although it was then
a very short time before said train was due, there was no
agent at the ticket office at said station, and plaintiff was
unable to get a ticket thereat; that plaintiff finally found said
agent out at the train, after the same had arrived at said
station, and applied to him to have said train wait until plain-
tiff could obtain a ticket and get on board the cars; that said
train, having in the meantime begun to move away from said
station, said agent told plaintiff to board the same at once,
and thereupon plaintiff climbed upon the steps of the nearest
car as the same was moving slowly past, and proceeded to go
up into said car; that while plaintiff was still upon the steps
of said car and before he could pass therefrom on to the
platform or into the interior thereof, the said train, by reason
of the negligent, careless and reckless management thereof
on the part of the employees in charge of the same, was
caused to give a sudden and violent jerk and lurch, hurling
the plaintiff from the steps of said car to the ground and
beneath the wheels of said car.

"5. That the said injuries as aforesaid were caused to the
plaintiff by the negligence, fault, carelessness and reckless-
ness of the said South Carolina and Georgia Railroad Com-
pany, its agents or lessees, in not having and keeping at said
ticket office at said time, an agent or other means for
supplying plaintiff with the ticket required for transportation
over said railroad; in failing to provide at said station a
careful and competent agent for the transaction of its busi-
ness; and in providing thereat an agent who was careless,
incompetent and inattentive to his duties; and in failing to
have said train wait or stopped to permit plaintiff to board
same; and in directing plaintiff to get aboard said train while
it was moving off as aforesaid; and in causing said train to
give a sudden and violent lurch and jerk in the manner it did
while plaintiff was upon the steps of said car and in the act

of boarding the same as aforesaid; by reason of all and each of which negligent, careless and reckless acts the plaintiff was wounded and injured in the manner aforesaid."

The defendant denied the material allegations of the complaint, and set up as a defense that the plaintiff's injuries were caused by his own negligence.

The defendant also alleged as a defense, "that on the 27th day of December, 1901, when it is alleged that the plaintiff, John Alexander Pickett, was injured, the South Carolina and Georgia Railroad Company was a corporation duly organized and existing under and by virtue of the laws of the State of South Carolina, and owned the certain line of railroad (commonly known as the South Carolina and Georgia Railroad) extending from the city of Columbia to the city of Charleston, in said State; but it further alleges that at said time the said line of railroad was under lease to the Southern Railway Company, the said lease bearing date the 18th day of April, 1899, and being for a term of thirty years, and was at the said time operated by the said railway company, under the terms of said lease. Defendant alleges that if there was or is any right of action for such alleged injury to the said Pickett, an action for the same should be brought against the said lessor or its lessee, and not against this defendant, which is a corporation duly created and organized under the statutes of this State on the        day of June, 1902, subsequent to the time the said John Alexander Pickett is alleged to have been injured."

The jury rendered a verdict against the defendant for $8,000.

The first question that will be considered is, whether his Honor, the presiding Judge, erred, in refusing the defendant's motion to dismiss the complaint, on the ground that it did not state facts sufficient to constitute a cause of action against it, for the reasons set forth in its defense. Section 2050 of the Code of Laws makes lawful the consolidation of railroad companies, under the circumstances therein mentioned. Section 2051 provides

the manner in which the consolidation is to be made. Sections 2052 and 2053 are as follows:

"Sec. 2052. Upon the making and perfecting the agreement and act of consolidation, as provided in the preceding section, and filing the same, or a copy, with the secretary of state, as aforesaid, the several corporations, parties thereto, shall be deemed and taken to be one corporation by the name provided in said agreement and act, possessing within this State all the rights, privileges and franchises, and subject to all the restrictions, disabilities and duties of each of such corporations so consolidated.

"Sec. 2053. Upon the consummation of said act of consolidation, as aforesaid, all and singular the rights, privileges and franchises of each of said corporations, parties to the same, and all the property, real, personal and mixed, and all debts due on whatever account, as well as stocks, subscription and other things in action belonging to each of such corporations, shall be taken and deemed to be transferred to, and vested in, such new corporation, without further act or deed; and all property, all rights of way and all and every other interest, shall be as effectually the property of the new corporation as they were of the former corporation, parties by said agreement; and the title to real estate, either by deed or otherwise, under the laws of this State, vested in either of such corporations, shall not be deemed to revert, or be in any way impaired by reason of this chapter: *Provided,* That all rights of creditors and all liens upon the property of said corporations shall be preserved unimpaired; and the respective corporations may be deemed to continue in existence to preserve the same; and all debts, liabilities and duties of either of said companies, shall thenceforth attach to said new corporation and be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."

The first section of an act approved 19th of February, 1902 (Acts of 1902, page 1152), provides: "That the Asheville and Spartanburg Railroad Company, the South Caro-

29—69

lina and Georgia Railroad Company, the South Carolina and Georgia Railroad Extension Company, and the Carolina Midland Railway Company be, and hereby they are, authorized to consolidate their capital stocks, franchises and properties with each other *under the laws of this State,* upon the payment of the fees now required by law : *Provided,* That from and after such consolidation or merger, the consolidated company shall possess and may exercise all the rights, privileges and franchises, *and shall be subject to all the liabilities of the said several constituent companies"* * * * (italics ours).

In the agreement under which these corporations were consolidated, is the provision that the name of the new corporation shall be Southern Railway—Carolina Division.

By reference to the act of 1902, it will be seen that the consolidation was to be made "under the laws of the State," and that the consolidated company "shall be subject to all the liabilities of the said several constituent companies." The language last mentioned evidently has reference to liabilities existing *before* the consolidation, for after that time the constituent corporations ceased to exist as such (except for the certain purposes mentioned in the statute), and could not any longer incur liabilities. Not only is the defendant made liable for debts existing against the constituent corporations at the time of consolidation, by section 2053 of the Code of Laws, but likewise by the act of 1902.

The appellant relies upon the case of *Stewart* v. *Ry. Co.,* 64 S. C., 92, 41 S. E., 827. That case, however, simply decided that the constituent corporation remained liable for debts existing against it at the time of the consolidation, but the question whether the consolidated corporation was also liable was not involved in that appeal. Our construction of the general statute and the act of 1902 is that the consolidated corporation, as well as the constituent corporation, are liable for debts existing against the constituent corporation at the time of consolidation. These views are in harmony

with the case of *Jones* v. *Ry. Co.,* 67 S. C., 181. This disposes of the first, eleventh and twelfth exceptions.

The second exception is as follows: 2. "Because his Honor erred in charging the jury as follows: 'Negligence in directing the plaintiff to go aboard said train while it was moving off, in causing said train to give a suddent and violent lurch or jerk while plaintiff was on the steps—you have the testimony as to that.' It is respectfully submitted that when his Honor said, 'you have the testimony as to that,' he was charging in respect to matters of fact, in violation of the constitutional inhibition in that regard." The record contains the following statement out of which this question arose: "Negligence 'in directing the plaintiff to get aboard said train while it was moving off, in causing said train to give a sudden and violent lurch or jerk,' while plaintiff was on the steps. You have the testimony as to that, under the circumstances of the case. Do you believe that the railway did give a sudden and violent lurch, jerk to the train, and was it such negligence under the definition which I have described to you, and did it result in injury to the plaintiff as the proximate cause? If so, and plaintiff himself did not contribute to his injury, the proximate cause of his injury, then he would be entitled to a verdict."

This was part of the charge in which the presiding Judge stated the alleged acts of negligence, and then instructed the jury as to the law applicable to each. The plaintiff had introduced testimony for the purpose of showing negligence in the particular mentioned, and the remark of the presiding Judge: "You have the testimony as to that," simply meant that they were to determine the facts from the testimony. This is shown by the language immediately following that remark. He did not undertake to give his opinion upon any fact that was in dispute. Furthermore, in *Turner* v. *Lyles,* 68 S. C., 392, the Court says: "Since the Constitution of 1895, Judges are not permitted to state the testimony to the jury, but it is not every statement of the testimony that will entitle the appellant to a new trial. The statement must be

of testimony upon a fact in issue, and there must be reasonable grounds for supposing that the jury may have been influenced by such statement, in a manner prejudicial to the rights of the appellant." This Court is satisfied that the remark of his Honor, the presiding Judge, was not prejudicial to the rights of the appellant in this case.

The next question for consideration is whether his Honor, the Circuit Judge, erred in ruling that the allegations of the complaint were sufficient to entitle the plaintiff to punitive damages. This depends upon the interpretation of the word "reckless." In Webster's International Dictionary, the word reckless is defined as "rashly negligent, utterly careless or heedless."

In *Proctor* v. *R. R.,* 61 S. C., 170, 39 S. E., 351, the Court says: "It is quite true that negligence may be so gross as to amount to recklessness, but when it does, it ceases to be mere negligence, and assumes very much the nature of wilfulness; so much so, that it has been more than once held in this State, that a charge of reckless misconduct will justify the jury, if the same be proved, in awarding punitive, vindictive or exemplary damages, while it never has been held, so far as we are informed, that the jury, under a charge of mere negligence, would be justified in awarding vindictive or exemplary damages. One in charge of so powerful and dangerous a piece of machinery as a locomotive is bound to use care in operating it, so as to avoid, as far as practicable, doing injuries to others; and if he uses such machinery recklessly and without regard to the rights of others, his conduct may as well be characterized by the term 'wilful' as by the term 'reckless,' for the difference in this regard between recklessness and wilfulness is scarcely appreciable." This is conclusive of the question under consideration, and sustains the ruling of the Circuit Judge. This disposes of the third, fourth, fifth, sixth, seventh and ninth exceptions.

The eighth exception is as follows: "8. Because his Honor erred in refusing to charge the defendant's fifth request to charge, which was as follows: 'If the evidence shows

that the train had started off and was in motion, then there was no obligation, statutory or otherwise, upon the defendant to cause the train to wait or to be stopped to permit the plaintiff to get on the train."

Section 2134 of the Code of Laws is as follows: "Every railroad company in this State shall cause all its trains of cars for passengers to entirely stop upon each arrival at a station advertised by such company as a station for receiving passengers upon such trains for a time sufficient to receive and let off passengers." It will thus be seen that the statute has made provision for persons desiring to board the train. The railroad company owes no duty to a belated passenger to stop its train in any other manner than that required by the statute. *Creech* v. *Ry.*, 66 S. C., 528, 45 S. E., 86. A contrary doctrine would tend to disarrange the schedules of the railroad company and thus enhance the danger to the traveling public. It was, therefore, error to refuse the request.

The tenth exception is as follows: "10. Because his Honor erred in refusing to charge the defendant's seventh request, which was as follows: 'There being no testimony in this case which would warrant or support a verdict of examplary or punitive damages, I charge you that you cannot award any such damages.'" The only testimony which we deem it necessary to discuss specifically in this connection is whether the testimony that the depot agent told the plaintiff to "go and get on the train" while it was in motion, tended to show that the plaintiff was entitled to punitive damages on account of recklessness. It was only by construing the word "reckless" as the equivalent of the word "wilful," that this Court was able to say that the allegations of the complaint were sufficient to sustain a recovery for punitive damages. We shall accord to it that interpretation in determining the question presented by the exception. We are satisfied that the words used by the depot agent to the plaintiff were intended as a mere suggestion and for the *plaintiff's benefit;* that there was no inten-

tional wrong on the part of the agent, nor wilful disregard of the plaintiff's right. It was error, therefore, not to charge as requested.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.