## 6968

### CROSBY v. SEABOARD AIR LINE RY.

1. JUROR.—In case one member of a panel of jurors is taken sick during the trial, it is not improper for the Judge to announce the fact and to ask generally if the case should proceed with eleven jurors.

2. IBID.—That counsel for plaintiff commented in argument on the fact that defendant's counsel objected to going on with eleven jurors is not ground for new trial, although such comment was not warranted by the record.

3. TESTIMONY DE BENE ESSE.—Where a witness is examined *de bene esse* on proper notice, both parties being represented, it is not error for notary to say in certificate the witness was sworn and examined instead of "cautioned and sworn * * * and carefully examined." Statute does not require the certificate to show deposition was sealed up by and kept in possession of notary until mailed.

4. TORT—FOREIGN LAWS.—An action for tort occurring in the State of Florida may be maintained against the carrier in this State and the law governing the case is the common law of the forum, whether Florida was historically originally an English province in absence of allegation and proof of the laws of Florida.

5. CARRIER—PASSENGER—PUNITIVE DAMAGES.—A complaint alleging a passenger alighted from a moving train at the wilful, unlawful and reckless urging and direction of the conductor, states a cause of action for wilfulness, but there being no evidence in this case tending to show the conductor wilfully invited, urged or assisted a lady to alight from a moving train, new trial is granted, although there is some evidence tending to show negligence on the part of the conductor.

MR. JUSTICE GARY *dissents.*

Before MEMMINGER, J., Hampton, November, 1907. Reversed.

Action by Addie Crosby and H. S. Crosby against Seaboard Air Line Railway. From judgment for plaintiffs, defendant appeals.

*Messrs. Lyles & McMahan* and *James W. Moore,* for appellant: *Messrs. Lyles & McMahan* cite: *The common law*

*should not be applied to a case of tort arising in State of Florida:* 66 S. C., 96; 6 Ency., 283, 284; 39 L. R. A., 835; 26 S. C., 415; Watson on Per. Inj., sec. 554; 8 Cyc., 386, 387; 32 Pa. St., 367; 27 S. C., 463; 68 S. C., 240; 20 N. Y. Supp., 406; 16 Cyc., 1084; 15 Cal., 252; 72 Mo., 522; 20 Mo. App., 389; 70 Mo., 625; 44 N. Y., 298; 5 N. Y., 447; 82 N. Y., 41; 14 Ark., 603; 50 Ark., 237; 52 Ark., 385; 58 Ark., 20; 95 N. W., 232; 70 Ark., 18; 5 Ency. Ev., 816-7; 174 Mass., 328; 10 Wend., 75; 20 Am. Dig. Cent. Ed., 178; 1 Chitty on Pl., 221; 13 Ency., 1062-3; 16 Cyc., 1084-5; 21 L. R. A., 467; 22 Ency., 1378-9; 50 Ark., 155; 23 N. Y., 465; 10 Col., 438; 18 Kan., 46; 113 Ala., 402; 58 Vt., 727; 72 Md., 144. *The confusion in these citations below may be dispelled by the view we urge:* 5 Ency., 806; 9 Ency. P. & P., 542; 6 Ency., 283; 7 Ency. P. & P., 386; 21 L. R. A., 467; 4 Wig. on Ev., secs. 2536, 2558, 2573. *The law as to punitive damages in this State does not apply to State of Florida:* 13 Cyc., 117. *The evidence under the law in this State does not make out wilfulness:* 69 S. C., 445; 29 S. C., 265, 381; 34 S. C., 311; 35 S. C., 475, 493; 36 S. C., 93; 38 S. C., 485. *No evidence that defendant was a carrier of passengers in Florida:* 4 Elliott on R. R., secs. 1573, 1582; 29 S. C., 275. *Discussion before jury of trying case with eleven jurors error:* 21 Ency. P. & P., 995-8; 77 S. C., 408-9; 2 Ency. P. & P., 748-754.

*Mr. Moore* cites: *Action is for a wilful tort:* 69 S. C., 445; 68 S. C., 100; 69 S. C., 161. *Scintilla of evidence means a spark:* 7 Pac., 795; 51 N. E., 651; 76 Me., 134; 15 Eng. Rul. Cas., 64; 78 S. C., 556. *No evidence of wilfulness:* 60 S. C., 48; 2 Suth. on Dam., sec. 393; 69 S. C., 443; 68 S. C., 100; 77 S. C., 148; 78 S. C., 556. *In case for wilful tort alone jury cannot give compensatory damages:* 61 S. C., 170; 64 S. C., 514; 63 S. C., 467; 76 S. C., 304.

*Messrs. C. C. Tracy, J. S. Griffin* and *W. S. Smith,* contra, cite: *De bene esse testimony properly admitted:* 30 S. C.,

155; 57 S. C., 1. *Power of Circuit Court to grant new trial nisi:* 31 S. C., 443; 54 S. C., 90; 47 S. C., 34. *Common law doctrine of tort applies in this case:* 66 S. C., 91; 6 Ency., 284; 39 L. R. A., 835; 26 S. C., 415; Watson on Per. Inj., sec. 554; 77 S. C., 481.

July 23, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action was brought to recover damages for personal injuries alleged to have been sustained by the plaintiff, Addie Crosby, on July 6, 1904, as a passenger on defendant's train, while alighting from the moving train at Midway, Florida, in obedience to the "wilful, unlawful and reckless" direction of the conductor.

The jury rendered a verdict in her favor for ten thousand dollars. The Circuit Court granted a new trial unless the sum of five thousand dollars be remitted therefrom. The plaintiffs remitted accordingly, and judgment was entered for five thousand dollars, from which defendant appeals on exceptions presenting the points we now consider:

1. During the progress of the trial the following occurred: The Court: "One of the jurors has stated to me that he is sick; will you go on with the eleven jurors by consent?" Mr. Smith: "I am willing." Mr. McMahan: "I could not consent to go on." Juror: "I will keep on rather than have anything about it."

The appellant contends that this was a public request by the Court to excuse the sick juror, which indicates that it was proper to do so, and that this was prejudicial to defendant, as he considered it to be his duty not to go on without a full panel. The case was the last for trial at the term, and the other jurors had been discharged. hence it would have worked a mistrial and continuance to have excused the juror. Before doing this it was proper for the Court to consider its effect upon the business of the Court and the rights of the litigants. The inquiry was addressed impartially to all concerned, and it was with respect to a practice

not infrequently adopted by counsel in such emergencies. We see nothing improper in the action of the Court.

2. During the argument of Mr. Smith to the jury "he commented upon defendant's refusal to let the case proceed with eleven jurors so as to excuse the sick juror, and he said, 'They are afraid to go before the jury—you see how they tried to stop this trial.'" Mr. McMahan interrupted, "I object to his discussing my failure to consent to continue the case with eleven jurors."

The Court: "Well, it is something that occurred in the case."

Mr. Smith: "I will relieve my friend by not discussing the matter."

It is contended that these references to defendant's refusal to go on without twelve jurors was improper and prejudicial. In *State* v. *Robertson*, 26 S. C., 118, the Court refused grant a new trial because the trial Court had allowed the State's attorney to go beyond the testimony and urge upon the jury that the defendant, prior to the time of the alleged rape, had committed an assault and battery on a woman and was dodging around evading arrest at the time of the alleged rape.

In *State* v. *Williamson*, 65 S. C., 242, 248, 43 S. E., 671, the solicitor in his closing argument to the jury spoke of the defendant, Williamson, as a thug, an assassin and a cowardly cur, and of the defendant, Snow, as a perjurer, and the trial Court did not interfere upon the request of the defendant's counsel. This Court in overruling an exception to this matter said: "It is undoubtedly the duty of the Circuit Court when appealed to, to repress any flagrant breach by counsel of the rules governing fair and legitimate argument, and for manifest abuse of discretion in this regard, from which it is probable that defendant was prejudiced, this Court would set aside the verdict. But we cannot say that there was an abuse of discretion in this case. The testimony taken was not set out in the case, and we cannot say

that there was no testimony in the case which might have made tolerable the rather severe language of the prosecuting attorney as a matter of inference and argument."

In *Kirby* v. *Tel. Co.,* 77 S. C., 404, 408, 58 S. E., 10, plaintiff's counsel, in his remarks to the jury, said: "If a telegram were sent to Mr. Duncan, Mr. Nicholson or Mr. Farr, that the telegram would go to them with arms open, and the company would fall over itself to deliver the message to any prominent man in Union." And, also, "That the newspapers of the State were constantly publishing, from New York to St. Augustine, articles about South Carolina juries not doing their duty when trying criminal cases, and that Mr. Sease, the solicitor, had remarked about it last week." Two members of the Court concurred in the view that the language was highly prejudicial to the defendant, and that the trial Court abused its discretion in not repressing it. The judgment was reversed by the Court, however, on other grounds.

As a general rule, it is safest and wisest to leave such matters to the trial Court, and it will rarely happen that such discretion will be so abused as to justify an appellate Court, not conversant with the surroundings, to reverse the judgment. The glow and heat of contest generally results in some unwarranted inferences and exaggerated statements, and it would be a hopeless task for the Court to attempt to confine argument to cold facts and colder logic.

Viewing the matter as it looks from the type of the record, the remarks of counsel were not warranted, since defendant merely exercised its plain right to insist upon a full panel. Still, the incident, which was the subject of comment, occurred in the trial and upon objection counsel desisted, before the Court had made any final ruling on the subject. This matter affords no ground for a new trial.

3. The Court properly overruled the objection to the introduction of the deposition of Dr. I. W. Martin, made on the grounds that the statute was not complied with (1) in

that the certificate of the notary merely stated that the witness was sworn and examined instead of stating that the witness was "cautioned and sworn to testify the whole truth and carefully examined;" (2) there was no certificate that the notary himself sealed up and directed and forwarded to the Court by mail and retained it in his possession until so mailed as required by statute.

There is nothing in the record to indicate non-compliance with the statute in any essential particular. The witness was sworn and examined in the presence of counsel for both sides pursuant to notice and agreement of counsel, and the certificate so shows. Section 2883 of the Code of Laws directs what the officer shall do with respect to retention of the deposition until he mails the same, with the notice and his certificate of the reasons for taking the same, but the statute does not require the certificate to show these things, and no effort was made to show failure of the officer to do his duty as required by the statute. *Bulwinkle* v. *Cramer,* 30 S. C., 157, 8 S. E., 689; *Henderson* v. *Williams,* 57 S. C., 3, 35 S. E., 261.

4. A number of exceptions to the refusal to direct a verdict, to the refusal of request to charge and to the refusal of motion for new trial, involve the question whether the action should fail because the tort alleged occurred in Florida, and there was no plea or evidence as to what is the law of Florida on the subject. Appellant contends that Florida, not being a State organized from the territory settled by the English, where historically the presence of the common law is to be presumed, but having the territory under the Spanish government prior to and at the time of its cession to the United States, there is no presumption of the common law of England in said State, and that the cause of action depending upon the law of Florida, it was the duty of plaintiff to allege and prove such law. The appellant's argument is full and able, but in our opinion the point made does not defeat the action. The defendant is a common carrier of passengers, operating in this State as

well as in Florida.  An action may be sustained in this State for an injury occurring to a passenger in Florida.  In the absence of any evidence as to the law of Florida the action must be controlled by the common law of the forum.

In *Rosemand* v. *Southern Ry.*, 66 S. C., 98, 44 S. E., 574, the Court held that in the absence of allegations and proof of the laws of another State the courts will presume that the common law prevails in that State.  As the point in issue in that case was with respect to the laws of Georgia, a State historically subject to the common law, it may be argued that the broad language of the Court should be limited to the particular fact; and the same may be said of *Allen* v. *Watson*, 2 Hill, 319, relating to the laws of Georgia; of *Association* v. *Rice*, 68 S. C., 240, 47 S. E., 63, relating to the laws of Virginia; and of *Jonesville Mfg. Co.* v. *Southern Ry.*, 77 S. C., 480, 58 S. E., 422, referring to the laws of Wisconsin.

But the rule, stated in its broadest terms in Rosemand's case, harmonizes with the simpler rule, that the common law of the forum should govern in the absence of any evidence as to the law of a sister State, because there is no other known law by which the case is solvable, and the Court will not presume that the law of a sister State, whatever may be its historical origin, is contrary to the common law as administered in this State.  Whenever the laws of another State are relied on to sustain an action or defense, they must be pleaded and proven.  There is some conflict of opinion and much learning on the subject, but we regard the rule stated as the simplest and most practical, and find that it is well supported by authority.  See *Brown* v. *Wright* (Ark.), 21 L. R. A., 467, containing an elaborate note in which cases are collated.

Since by the common law of this State an action may be maintained for punitive damages for a wilful tort committed by a common carrier upon its passenger, the action was maintainable here in the absence of evidence of contrary

laws of another State by which the action should be governed.

5. The defendant requested the Court to instruct the jury that there was no evidence of wilfulness or wantonness, and motion for a new trial was made on the same ground. Both motions were refused. We think the exceptions to these rulings are well taken.

In granting a new trial *nisi,* Judge Memminger said: "In this case I was not at all satisfied with the verdict, having received, somewhat, the impression from the evidence that the plaintiff in interest, Mrs. Crosby, was malingering from start to finish. However, I find, upon careful consideration, that the record does not bear out this view, and I have decided.not to set the verdict aside entirely, but to reduce it one-half. While there was some evidence to go to the jury on the question of punitive damages, it was wholly insufficient to warrant a finding for such damages. I think negligence was sufficiently established, and plaintiffs were entitled to have a recovery for some amount commensurate with her injuries."

It thus appears that the Circuit Judge regarded his action as stripping the case of punitive damages and leaving the verdict to stand as for compensatory damages. The law in this State is that, in an action based solely upon a wilful tort, there can be no recovery for any damages, punitive or compensatory, unless there is some evidence to support the charge of wilfulness. *Chiles* v. *Southern Ry.,* 69 S. C., 331. It must follow that the judgment cannot stand as representing only compensatory damages, unless it can be shown that there was evidence of wilful tort, as alleged. The Circuit Court has declared that the evidence was wholly insufficient to warrant a finding in punitive damages, and in this we entirely agree. The question, then, is, was there any evidence tending to show wilfulness?

As declared in *Taylor* v. *Ry.,* 78 S. C., 556, a *scintilla* of evidence is any material evidence which, taken as true, would tend to establish the issue in the mind of a reasonable juror.

The law affords no redress for wrongs which exist wholly in the imagination. Verdicts cannot be allowed to rest upon mere surmise, conjecture or caprice. The law is moved by material evidence, including proven facts and those presumptions which the law recognizes from motives of public policy and as founded in human experience. A court fails to exercise its high prerogative to administer justice according to law when it permits a verdict to stand which finds no support in the evidence.

The complaint alleged that "when the train upon which she was riding reached such station of Midway and stopped therefor, the plaintiff proceeded to get off the same, but was so impeded and prevented by the rush of passengers to get off at said station that before she got upon the steps of said train the same commenced to move off, and that, while hesitating, she was urged and directed by the conductor in charge of said train to get off the same while moving, he saying that he did not have time to stop; that urged by such wilful, unlawful and reckless injunctions of the conductor, and in obedience to such directions, she proceeded to alight from such train while in motion, and in jumping therefrom was thrown violently to the ground, her shoe burst, her instep sprained, and herself struck with great force in the side by an umbrella which she had in her hand at the time of springing from said train; that at the time she so alighted, by the direction of the conductor, as aforesaid, she was great with child, and the blow which she received from the umbrella, coupled with the violence of her fall, caused a miscarriage within a short time thereafter," etc.

As the word "unlawful" assigns no specific legal character to the acts alleged, *Aaron* v. *Southern Ry.,* 68 S. C., 98, 46 S. E., 556, and as the word "reckless" is deemed equivalent to "wilful," *Pickett* v. *Southern Ry.,* 69 S. C., 445, 48 S. E., 466, it is clear that the complaint does not charge negligence, but charges wilfulness; and as the only act characterized as wilful was the direction of the conductor to alight from the

moving train, attention should be directed to the question whether there was any testimony to support the allegation.

Plaintiff's own account of the circumstances is as follows: "As the conductor came through the train he called out the station, Midway, and I took my packages and umbrella so as to be ready when the train stopped. But as the train halted, before I could leave my seat, it moved off, and I went to the door thinking it would stop again. I saw it was not going to stop; I was out on the platform of the train, heard some one say something, looked to my left, and the conductor was on the ground. He said, 'Come on, I will take you off safe,' and of course I went on, and my foot leaned on the end of a crosstie extending from the sidetrack. My foot being one-sided, it caused me to stagger forward, and the umbrella, striking in the ground, supported me. Q. The conductor told you to come on, he would help you off safely? A. Yes. Q. Was the train still in motion when he helped you off? A. Yes. Q. Did you receive any injuries, Mrs. Crosby, in alighting from that train? A. I sprained my ankle, also my wrist, and besides caused other troubles. Q. Did you have any internal injuries? A. Yes; I did. Q. State to the jury what they were. It is necessary that you state them for the jury to understand. A. From the jar and the pressure of the umbrella handle, it caused a miscarriage and also an enlargement."

The conductor's version is as follows: "Mrs. Crosby was a passenger on our No. 77, from Tallahassee, the afternoon of July 6th. The train stopped at Midway, the station was called in both the white and colored car, and there were several passengers, Mrs. Crosby and three others, to get off the white car, and there were six passengers out of the colored car, and about four colored people to get aboard. The colored passengers left through the front end of the colored car, and the white passengers left from the front end of the white car. There were not any white passengers to get aboard. Three white passengers got off, and the colored passengers got off and others got on, and about that

time Mrs. Crosby showed up on the platform. I had given the signal to move ahead, and just as the train started out Mrs. Crosby came out on the platform. I told her to come down, that I would help her off. The wheel had just begun to move; it made about one revolution, and the car had not moved over a foot and a half or two feet, moved off without a jerk or jar. It was a five-car train, made up of mail and express, a first and second class coach and a sleeper. The ground was level, filled up between the crossties even with the ties, and as Mrs. Crosby came down the steps I caught her under each arm and lifted her down, flat-footed, on the ground, absolutely no fall, no punch in the ground with an umbrella and no complaint, but stepped off absolutely flat-footed on the ground and walked off about her business without any stagger, any side slip or turn of the ankle or anything unusual. Absolutely, the only thing unusual about it was the fact that the car had started to move."

There was a sidetrack between the main line and the depot, and it seems, according to plaintiff's version, that she stepped on the end of one of the crossties of the sidetrack, which was exposed some inches above the ground. The plaintiff's husband, who was sectionmaster of that portion of the road, but who was not present at the time of the alleged injury, testified that on a portion of the sidetrack at the station some of the crossties were exposed. The conductor testified that the place of landing was the usual place for passengers, and that the space between the main line and siding was level and smooth, and that the distance from the platform step to the ground was not long at all, but made a comfortable step. Assuming that there was an exposed crosstie on the sidetrack near the landing spot, there is nothing to show that the conductor knew it and recklessly subjected plaintiff to contact with it. There is a noticeable failure in plaintiff's testimony to explain how she came in contact with the end of the crosstie, after being helped to the ground by the conductor, as a direct result of the act

of alighting from the moving train.    If she had alighted from the train while standing, she would necessarily have had to cross the sidetrack in going her way, and, from all that appears in the testimony, she may have stumbled on the crosstie shortly after being safely landed from the train. As to the time allowed for passengers to alight, the plaintiff testified that the train did not stop long enough for her to get off; the conductor testified that he stopped a reasonable time for all passengers to alight, and the porter testified that the stop was four or five minutes.    Assuming that this would have presented an issue of negligence, as to whether a reasonable stop was made, under the pleadings to that end, it affords no evidence of a reckless or wilful disregard of duty by the conductor.    There was no evidence that the conductor ordered the train forward when he knew there was a passenger about to alight, and that the injury resulted therefrom.    It appears that, upon discovering plaintiff on the platform, the conductor was not certain whether he signalled the train to stop, but the porter testified that he, the porter, extended the signal to stop, after observing such a signal from the conductor.    The train in fact stopped after moving about a car's length.    The act of the conductor in inviting and assisting plaintiff to alight, before the complete stopping of the slowly moving train, may have been some evidence of negligence in failing to exercise that high degree of care due to a passenger, *Cooper* v. *Ry.,* 56 S. C., 94, 34 S. E., 16, but there is no foundation for the contrary inference, that he acted wilfully or in conscious disregard of his duty and the safety of the passenger.    *Pickett* v. *Ry.,* 69 S. C., 445, 48 S. E., 466.

The action of the Circuit Judge recognizes that the verdict was erroneous because it included punitive damages for wilfulness, and as there was no standard by which he could say that the verdict included such damages only to the extent of five thousand dollars, and as no recovery could be had in this case for compensatory damages, except upon evidence

of wilfulness, of which there was none, the verdict must be set aside.

The judgment of the Circuit Court is reversed.

MR. JUSTICE WOODS *concurs in the result.*

MR. JUSTICE GARY *dissents.*