MRS. HALL'S CAFETERIA v. PHOENIX INS. CO.
OF HARTFORD, CONN., *ET AL.*

(122 S. E., 580)

1. Judgment—Reopening Default Judgment Discretionary, and Discretion Not Abused.—Reopening a default judgment and allowing defendants to answer *held* a matter in Court's discretion, in the exercise of which no abuse was shown.

2. Conspiracy—Evidence Held to Support Refusal of Directed Verdict for Plaintiff.—In an action charging a conspiracy to slander and blacklist, evidence *held* to support refusal to direct a verdict for plaintiff against insurance companies whose agent was charged with blacklisting plaintiff.

3. TRIAL—APPELLANT MUST REQUEST COURT TO MAKE CHARGE MORE
   SPECIFIC, WHERE IT IS NOT SUFFICIENTLY BROAD.—Where, in ap-
   pellant's opinion, trial Court's charge was not broad enough, ap-
   pellant must request Court to make it more specific.

4. INSURANCE—INSURANCE COMPANY NOT LIABLE FOR AGENT'S ACT,
   UNLESS ENGAGED IN ITS BUSINESS.—An insurance company is not
   liable for its agent's act, unless agent was engaged in its business.

5. APPEAL AND ERROR—ORDER REQUIRING PRINTING OF UNNECESSARY
   TESTIMONY, HELD ERRONEOUS.—Order resettling the case, and re-
   quiring printing of unnecessary testimony, in violation of rules of
   Court, was erroneous.

Before TOWNSEND, J., Richland, June, 1923.   Affirmed.

Action by Mrs. Hall's Cafeteria against the Phœnix In-
surance Company of Hartford, Conn., D. G. Ellison and
others.   Judgment for defendants and plaintiff appeals.

*Mr. D. W. Robinson,* for appellant, cites: *Character and
business standing are property rights:* 254 U. S., 465; 257
U. S., 327; 38 L. R. A., 197; 49 L. R. A., 616; 87 S. C.,
405; Note L. R. A., 643; 49 L. R. A., 212. *Libel:* 10 Kan.
App., 536. *Agreement to refrain from trading:* 64 L. R.
A., 262–264; 43 L. R. A., 804–805; 49 L. R. A., 616.
*Conspiring:* 257 U. S., 327; 148 U. S., 203; 87 S. C., 41;
(Ad. Op. Oct. Term, 1922, 697–698); 5 R. C. L., 1104;
1091–1092. *Defendant's liability without conspiracy:* 87
S. C., 41; 124 S. C., 28. *Publication:* 119 S. C., 244;
Note 18 A. L. R., 776; 71 S. C., 569; Newell on Libel &
Slander, 3d Ed., Secs. 385, 392. *Cancellation of policy:*
82 S. C., 283–284; 23 S. C., 595–596. *Words actionable
per se:* Newell on Libel & Slander (3d Ed.), Secs. 41, 75;
Secs. 983, 1014; Secs. 985, 1015; Secs. 988, 1017; 63 S.
C., 530; 93 S. C., 475; 71 S. C., 116; 1 N. & McC., 290;
25 (S. C. L.), 17. *Damages:* 72 S. E., 449; 73 S. E., 472;
82 S. E., 646. *Law implies malice in words affecting
credit:* 126 N. E., 260; 167 N. W., 584; 76 S. E., 724; 112
S. E., 111. *Dishonoring check:* 116 S. C., 216; 113 S. C.,
512; 74 S. C., 188. *Malice:* Newell on Libel & Slander
(3d Ed.), Secs. 390, 388, 393; Secs. 375–390; 68 S. C.,

312. *Retracting statements:* 71 S. C., 119–120; Newell on Libel & Slander (3d Ed.), Secs. 379, 390; 10 A. L. R., 666; 214 U.S., 189; 218 Fed., 795; 26 A. L. R., 454. *Good faith as mitigation of damage:* 83 S. E., 340; 21 S. C., 344–345. *Actual malice:* Newell on Libel & Slander (3d Ed.), pp. 388–389, Secs. 375, 376; 407 Secs. 407–408, p. 409, Sec. 411; 184 Pac., 672; Note to 12 A. L. R., 1076–1077; 1029–1030; 1031–1032; 73 S. E., 472; 95 S. C., 93; 97 S. C., 241; M. V. L., 2 Rich; 2 McCord, 288; 3 Hill, 176; 123 S. C., 323. *Corporation liability:* 108 S. C., 220; 117 S. C., 332; 124 S. C., 29; 120 S. C., 515; 119 S. C., 244; 115 S. C., 435; 96 S. C., 298; Newell on Libel & Slander, p. 97, 436; 121 S. C., 410. *Payment of premiums a contract to carry insurance until used up:* 82 S. C., 283; 23 S. C., 595; 44 S. E., 597; 12 S. E., 989. *Estoppel—regarding cancellation:* 110 S. C., 317; 52 S. C., 228; 117 S. E., 210; 119 S. C., 221. *Motion to make more definite does not postpone time for answering:* Code 1922, Vol. 1, Sec. 400; 88 S. C., 420; 60 S. C., 370; 81 S. C., 130; 102 S. C., 357. *Opening default or extending time to answer:* 107 S. C., 483; 110 S. C., 181; 114 S. C., 40; Code 1922, Vol. 1, Sec. 437; 64 S. C., 501; 47 S. C., 396; 73 S. C., 207; 25 S. C., 67; 24 S. C., 141; 25 S. C., 589; 14 S. C., 332; 109 S. C., 510; 53 S. C., 230; 26 S. C., 589; 36 S. C., 581; 59 S. C., 480; 43 S. C., 438.

*Messrs. Nettles & Tobias, W. B. Marion* and *C. N. Sapp,* for the respondents, cite: *Right of recovery:* 87 S. C., 18. *Liability of Insurance Company:* 120 S. C., 516; 115 S. E., 904; 108 S. C., 179; 114 S. E., 402; 103 S. C., 433; 179 N. W., 117; 172 U. S., 532; 190 Ill. App., 64; 86 N. W., 303. *Judge's charge:* 69 S. C., 331; 81 S. C., 31. *With reference to first, "recklessness and willfulness":* 61 S. C., 170; 69 S. C., 453; *second, "wrongfully and unlawfully":* 68 S. C., 100; *third, recovery of damages on charge of conspiracy:* 24 L. R. A. (N. S.), 898; 107 Mass., 562; 21 L. R. A., 340; 63 L. R. A., 294; *fourth, Facts:* 120 S. C.,

516; *fifth, Ratification:* 86 N. W., 303; 108 S. C., 179. Torts, p. 127; Story on Agency, Sec. 455; 28 N. E., 279; 133 S. W., 1042; 114 S. E., 402; 179 N. W., 117; *sixth, Subrogation:* Joyce on Insurance, Section 3580; Cooley's Briefs on Ins., 915. *Jury's complete vindication of Judge's use of discretion:* 89 S. C., 483; 84 S. C., 146; 2 R. C. L.; 337; 4 Rich. L., 463; 73 S. C., 179; 42 A. S. R., 145; 17 S. C., 31; 19 R. C. L., 674; 120 Pac., 239. *Default:* 102 S. C., 354.

April 23, 1924.

The opinion of the Court was delivered by Mr. Justice Watts.

"This was an action commenced September 20, 1922, in behalf of the plaintiff and against the defendants for damages for conspiracy and blacklisting. The case was tried before his Honor, W. H. Townsend, and a jury at June Term, 1922, resulting in a verdict for the defendants. The appeal is from the order made by his Honor, T. J. Mauldin, December 8, 1922, referred to below, and from the rulings, verdict, order, and judgment in the trial of the case before Judge Townsend."

The complaint contained three causes of action: A cause of action charging the three defendants with a conspiracy to slander the plaintiff corporation; a cause of action against the three defendants for a wrongful breach of separate contracts of insurance; and a cause of action for the unlawful use of a local agent's insurance exchange in a conspiracy to blacklist the plaintiff and prevent it obtaining other insurance.

Judgment for plaintiff was taken by default. Judge Mauldin reopened the case, and allowed defendants to answer. Exception to Judge Mauldin's order was duly taken; the contention of plaintiff being that it was without merit.

This was a matter in the wise discretion of Judge Mauldin, and we see no erroneous use of that discretion; the de-

fendants acted in good faith according to what the defendants' attorneys conceived to be a proper practice, and convinced Judge Mauldin that they had a meritorious and substantial defense. His Honor in his discretion allowed them to answer, reopened the judgment by default, and allowed then to have their day in Court. We see no error, and the exceptions to Judge Mauldin's order are overruled.

The exceptions to the rulings, verdict, order, and judgment in the trial of the case before Judge Townsend are upon a motion for directed verdict in favor of plaintiff against all of the defendants; a directed verdict against defendants Ellison and Phoenix Insurance Company; a directed verdict against the defendant D. G. Ellison; exceptions to his Honor's charge to the jury; that his Honor erred in refusing to grant a new trial, and from Judge Townsend's order settling the case.

His Honor committed no error in his refusal to direct a verdict against any or all of the insurance companies. The evidence shows that the organization known as Columbia Insurance Exchange was an organization of the local agents of Columbia and New Brookland.

No fire insurance company is a member of this organization. The evidence shows that no company is a member of this exchange, and there is no evidence in the case that any of the defendant companies knew of its existence. The object of the local organization is to protect themselves from giving credit to a person not likely to pay them. Ellison was a member of this exchange. Neither of the companies were members or knew anything of its existence, or of its operations, unless it be that knowledge of Ellison, as agent of the companies, could be imputed to them, which knowledge Ellison acquired as agent of his company, acting in the scope, or apparent scope, of his authority. We suppose that it would not be contended that, if Ellison were

a member of the South Carolina Club or Columbia Cotillion Club, or any other social club, and acquired any information in reference to a person being slow in paying debts, and acted on it, knowledge would be imputed to the company.

To have directed a verdict in the light of the evidence against all or any of the companies would have been erroneous. As to the directed verdict against Ellison, the evidence is conflicting. Ellison contended that he acted in good faith, and that the organization did not act improperly, and that there was no improper use of the organization; that he was acting as agent of the Phoenix in reporting the name. All of this was properly submitted to the jury for their determination. We see no error as complained of by the exceptions that his Honor charged on the facts. It was throughout a remarkably clear statement of the law, applicable to the facts of the case.

His Honor clearly kept in mind *Rhodes* v. *Granby Cotton Mills,* 87 S. C., 18; 68 S. E., 824, and carefully laid down the law as established by that case; the principles of law in that case and this case are identical. If his Honor's charge was not broad enough as to the law as charged in the opinion of appellant, it was incumbent upon the appellant to make a request of the Court to make it more specific. As to willfulness, wantonness, or maliciousness on the part of Ellison in reporting the name, his Honor was not in error under the cases of *Chiles* v. *Railway Co.,* 69 S. C., 331; 48 S. E., 252. *Crosby* v. *Railway Co.,* 81 S. C., 31; 61 S. E., 1064.

Considering the charge of his Honor in its entirety, we fail to see any reversible errors as complained of.

We see no intimation of opinion on the facts. The Court in telling the jury and in leaving to them to settle the facts under the testimony in the case that the companies would not be liable, unless Ellison was engaged in business of the companies, was correct under *Knight* v. *Laurens*

*Motor Co.,* 108 S. C., 179; 93 S. E., 870; L. R. A. 1917B., 151. *Goble v. American Ry. Express Co.* (S. C.), 115 S. C., 904. *Courtney v. American Ry. Express Co.,* 120 S. C., 516; 113 S. E., 332; 24 A. L. R., 128.

As to exception of appellant as to the order in settling the case, we think that the exception should be sustained, as it required the printing of much unnecessary testimony in violation of the rules of Court; all other exceptions are overruled, and judgment affirmed.

Messrs. Justices Cothran and Marion concur.

Mr. Justice Fraser dissents.

Mr. Chief Justice Gary did not participate.

Mr. Justice Fraser, I dissent. I think there should have been a new trial. At the time the policy was canceled unearned premiums had been paid. This was acknowledged by a return of the surplus. The insurance companies had the right to cancel, and that right was absolute. As soon as the policies were canceled, there were no unpaid premiums. On the contrary, there was a surplus, and consequently she could not have been blacklisted for nonpayment of premiums. Ellison knew from his own books that he owed Mrs. Hall unearned premiums. By this black list he put her where she had to pay cash for insurance, and he withheld her money so that she could not use it to procure other insurance. Ellison had the right to demand the entire cash at once, or within 30 or 60 days. If not paid within that time, he had the right to cancel. He then had the right to demand of her payment for the 30 or 60 days at short-time prices, but, if she then paid that amount, the transaction was closed, and she was not subject to black list. If she did not pay this short-time premium, she may have been subject to black list.

Ellison, however, agreed to payments in installments. When he collected more money than was due up to the date of cancellation, she was not subject to black list. Ellison did know the fact. His own books showed it.