708 S.E.2d 766

John and Charlene TURNER, Petitioners,

v.

Douglas A. MILLIMAN, Consumer Benefits of America, NIA Corporation, MidAmerica Life Insurance Co., World Service Life Insurance Co., Provident American Life and Health Insurance Co., Provident Indemnity Life Insurance Co., and Central Reserve Life Insurance Co., Respondents.

No. 26953.

Supreme Court of South Carolina.

Heard Feb. 1, 2011.

Decided March 28, 2011.

John W. Carrigg, Jr., of Irmo, for Petitioners.

Jonathan Matthew Harvey, of Columbia; Lawrence B. Orr, of Orr & Ervin, of Florence; Stephanie G. Flynn and Phillip E. Reeves, both of Gallivan, White & Boyd, of Greenville, for Respondents.

Chief Justice TOAL.

John and Charlene Turner (Petitioners) brought an action against Douglas A. Milliman (Milliman), Consumer Benefits of America (CBA), NIA Corporation, MidAmerica Life Insurance Co. (MidAmerica), World Service Life Insurance Co., Provident American Life and Health Insurance Co. (Provident American), Provident Indemnity Life Insurance Co. (Provident Indemnity), and Central Reserve Life Insurance Co. (Central Reserve) (collectively, Respondents) [1] for fraud, negligent misrepresentation, and violation of the South Carolina Unfair Trade Practices Act (SCUTPA). This Court granted Petitioners' request for a writ of certiorari to review the court of appeals' decision in *Turner v. Milliman*, 381 S.C. 101, 671 S.E.2d 636 (Ct.App.2009) that affirmed as modified the trial court's grant of summary judgment in favor of Respondents.

## FACTS/PROCEDURAL HISTORY

In November 1996, John Turner (Turner) was employed at his family's radiator service business and was in need of health insurance coverage for himself and his son. Petitioners contacted Milliman, a local insurance agent, to inquire about purchasing health insurance coverage. Petitioners and Milliman discussed Turner's health insurance options.

Turner alleged Milliman represented to him that a group policy with CBA would be a good option because the future premiums would not increase as dramatically as the premiums with individual insurance plans. Turner also contended Milliman represented to him that group health insurance would be beneficial because of the following: (1) Turner was at an age when he could start developing medical problems and group coverage would allow him to keep his coverage; (2) companies

---

1. Of these, Milliman, CBA, MidAmerica, Provident American, Provident Indemnity, and Central Reserve are the Respondents.

writing individual insurance policies were going out of business and the prices of those policies were skyrocketing; (3) group health insurance premiums would not drastically change or dramatically increase; and (4) the only way people could afford insurance was to get group health insurance coverage. Turner stated he was also told CBA would monitor the insurance industry and offer its members better coverage when better coverage was available. Based on these alleged representations, Turner purchased health insurance through CBA.

MidAmerica issued the coverage to Turner, and the coverage was concurrently assumed and reinsured by Provident Indemnity.[2] The following represents the increases in Turner's monthly premium:

| | |
|---|---|
| November 1996: | $101.70 [3] |
| June 1997: | $109.70 |
| June 1998: | $143.38 |
| December 1998: | $194.50 |
| June 1999: | $230.90 |
| December 1999: | $271.95 |
| June 2000: | $331.81 |
| December 2000: | $456.21 |
| June 2001: | $646.19 [4] |
| July 2001: | $799.61 [5] |

Turner attested he anticipated increasing premiums, but by the end of 1999 he thought the increases were getting out of hand.

In June 2001, Provident American notified Turner his policy would be terminated on September 30, 2001. Turner was offered a different policy for the same premium, $799.61, but with fewer benefits. Also in June 2001, the South Carolina Department of Insurance responded to an inquiry made by Petitioners. The Department of Insurance informed Petition-

---

2. In May 1997, this policy was terminated and assumed by Provident American.

3. This is the original monthly premium paid by Turner.

4. CBA informed Turner that this increase was due to increased research and development healthcare costs.

5. CBA informed Turner that this increase was due to rising healthcare costs as well as substantial losses sustained by Provident American.

ers that Turner purchased a group association policy which was not subject to rate approval by the Department. Turner testified he attempted to find alternate healthcare coverage, but due to the onset of diabetes, no insurance company would insure him.[6] Despite not obtaining other coverage, Turner declined the replacement coverage and has been without health insurance since September 2001.

The circuit court granted summary judgment to Respondents, finding that (1) Petitioners' claims were barred by the three year statute of limitations, (2) Milliman's statements as to future events were not actionable, (3) allegations of unfair and deceptive practices in the context of insurance are not actionable pursuant to SCUTPA, and (4) Charlotte Turner was not a proper party plaintiff. The court of appeals reversed the grant of summary judgment in relation to the three year statute of limitations, finding it was a jury issue as to when Petitioners should have known of any potential claims. *Turner*, 381 S.C. at 111, 671 S.E.2d at 642. However, the court of appeals affirmed the grant of summary judgment regarding Milliman's alleged representations, finding they were not actionable as mere statements of unfulfilled promises or statements as to future events and no evidence was presented to show Milliman made the statements only to induce Petitioners to procure the policy. *Id.* at 113, 671 S.E.2d at 643.[7]

## ISSUE

Did the court of appeals err in holding that summary judgment was properly based upon the finding that Milliman's statements regarding the insurance were mere unfulfilled promises or statements as to future events?

## STANDARD OF REVIEW

When reviewing a grant of summary judgment, appellate courts apply the same standard applied by the trial

---

6. Turner developed diabetes in June 1997.

7. The court of appeals did not address the remaining issues on appeal because disposition of this issue was dispositive of the appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (citation omitted) (finding appellate court need not review remaining issues when determination of a prior issue is dispositive).

court pursuant to Rule 56(c), SCRCP. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002) (citation omitted). Summary judgment is appropriate when the pleadings, depositions, affidavits, and discovery on file show there is no genuine issue of material fact such that the moving party must prevail as a matter of law. *Id.*; Rule 56(c), SCRCP. "When determining if any triable issues of fact exist, the evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party." *Fleming*, 350 S.C. at 493–94, 567 S.E.2d at 860 (citation omitted). In order to withstand a motion for summary judgment in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence. *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009). In cases requiring a heightened burden of proof, the non-moving party must submit more than a mere scintilla of evidence to withstand a motion for summary judgment. *Id.* at 330–31, 673 S.E.2d at 803.

## LAW/ANALYSIS

■■ Petitioners argue the court of appeals erred in affirming the circuit court's grant of summary judgment because Milliman's statements were false statements of fact, which would support their fraud and negligent misrepresentation claims. Specifically, Petitioners contend the representation by Milliman that the policy was a group policy presents a genuine issue of material fact such that the grant of summary judgment by the circuit court was improper. We agree.

■ In order to establish a claim for fraud in the inducement to enter a contract, a party must establish the following by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury. *M.B. Kahn Constr. Co. v. S.C. Nat'l Bank of Charleston*, 275 S.C. 381, 384, 271 S.E.2d 414, 415 (1980).

 To establish liability for negligent misrepresentation, the plaintiff must show by a preponderance of the evidence: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation. *Quail Hill, LLC v. County of Richland,* 387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010); *McLaughlin v. Williams,* 379 S.C. 451, 456, 665 S.E.2d 667, 670 (Ct.App.2008) (noting the elements of negligent misrepresentation must be established by a preponderance of the evidence). " 'Evidence of a mere broken promise is not sufficient to prove negligent misrepresentation.' " *Sauner v. Pub. Serv. Auth. of S.C.,* 354 S.C. 397, 407, 581 S.E.2d 161, 166 (2003) *(quoting Winburn v. Ins. Co. of N. Am.,* 287 S.C. 435, 443, 339 S.E.2d 142, 147 (Ct.App.1985)).

 Ordinarily, to be actionable, a statement must relate to a present or preexisting fact, and cannot be predicated on unfulfilled promises or statements as to future events. *Davis v. Upton,* 250 S.C. 288, 291, 157 S.E.2d 567, 568 (1967).[8] "However, where one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such." *Id.* (citation omitted). "[E]ntering into an agreement, with no intention of keeping such agreement, constitutes fraudulent misrepresentation; however, mere breach of contract does not constitute fraud." *Adams v. G.J. Creel and Sons, Inc.,* 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995). A future promise is not fraudulent unless such promise was part of a general design or plan, existing at the time, to induce a party to enter into a contract or act as he or she otherwise would not have acted, to his or her injury. *Bishop Logging Co. v. John Deere Indus. Equip. Co.,* 317 S.C. 520, 527, 455 S.E.2d 183, 187 (Ct.App.1995) *(quoting Coleman v. Stevens,* 124 S.C. 8, 16, 117 S.E. 305, 307 (1923)). "Evidence of mere nonperformance of a

---

**8.** *See Sauner,* 354 S.C. at 408, 581 S.E.2d at 167 (2003) (applying the same rule to negligent misrepresentation cases).

promise is not sufficient to establish either fraud or a lack of intent to perform." *Woods v. State*, 314 S.C. 501, 506, 431 S.E.2d 260, 263 (Ct.App.1993) (citation omitted). An inference of a lack of intent to perform a promise can only be made when nonobservance of a promise is coupled with other evidence. *Id.* (citation omitted).

Under the elements for both fraud and negligent misrepresentation, the representation at issue must be false. *See Fields v. Melrose Ltd. P'ship*, 312 S.C. 102, 105, 439 S.E.2d 283, 285 (Ct.App.1993) ("To be actionable, the representation must relate to a present or pre-existing fact and be false when made."). Respondents argue the health insurance policy sold to Turner was a group health insurance policy. The Certificate of Insurance of both the MidAmerica and Provident American insurance policies states, "This certificate summarizes the provisions of the Group Policy that are important to you. . . . The Group Policy, alone, constitutes the entire contract under which rights and benefits are provided." Moreover, Dr. Tim Ryles, an expert in insurance regulation, testified the insurance coverage purchased by Petitioners was a group insurance policy. Respondents also contend Petitioners' belief that the policy was not a group policy is based on a misunderstanding about how coverage is issued under the policy. At all times when Turner's health insurance was in effect, CBA was identified as the policyholder to which the master group policy of insurance was issued. Within that framework, Turner completed an individual application, a term specifically defined within the group policy, to obtain coverage under the group policy.

Petitioners point to a certificate issued November 6, 2001 by Provident Indemnity which states the coverage issued was individual coverage. Petitioners note this correspondence stands in sharp contrast to other correspondence from the same company stating the product was group coverage. Petitioners also point to a letter from Continental General Insurance Company dated July 18, 2001 stating Turner was not eligible for insurance coverage because he was trying to replace an individual policy. We find this evidence meets the scintilla of evidence standard such that a grant of summary judgment as to the negligent misrepresentation claim was inappropriate. However, the fraud claim requires proof by

clear and convincing evidence; thus, more than a mere scintilla of evidence must be presented to withstand a motion for summary judgment. *See Hancock,* 381 S.C. at 330–31, 673 S.E.2d at 803. Due to the heightened standard of review applied to fraud claims, we find the grant of summary judgment on the fraud claim appropriate.

### CONCLUSION

Petitioners have presented at least a scintilla of evidence that the policy issued was an individual policy, not a group policy. Hence, the grant of summary judgment on the negligent misrepresentation claim is reversed. However, due to the heightened standard of review regarding fraud, the grant of summary judgment on the fraud claim is affirmed.

PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.