# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Richard Viviano and Johnette Gunter, Plaintiffs,

Of whom Richard Viviano is the Appellant,

v.

Fulton Jeffers and Braeloch I Association, Inc. d/b/a Braeloch Homeowner's Association, Sandy Carroll individually and in her capacity as a member of the Board of the Braeloch Homeowner's Association, and Derrick Boddy individually and in his capacity as a member of the Board of the Braeloch Homeowner's Association, Respondents.

Appellate Case No. 2024-000147

———————

Appeal From Aiken County
William P. Keesley, Circuit Court Judge

———————

Opinion No. 6120
Heard May 13, 2025 – Filed August 20, 2025

———————

**AFFIRMED**

———————

John W. Harte, of John W. Harte, Attorney at Law, LLC, of Aiken, for Appellant.

Paul Knapp Simons, Jr., of Hull Barrett, PC, of Aiken, for Respondent Fulton Jeffers.

Clarke Wardlaw McCants, IV, and Clark Wardlaw
McCants, III, both of Nance & McCants, of Aiken, for
Respondent Braeloch I Association, Inc.

Mary Daniel LaFave and Laura Ruth Baer, both of
LaFave Bagley, LLC, of Columbia, for Respondents
Sandy Carroll and Derrick Boddy.

———————

**MCDONALD, J.:** Richard Viviano appeals the circuit court's order granting a motion to enforce his settlement with Fulton Jeffers, Braeloch I Association, Sandy Carroll, and Derrick Boddy (collectively, Respondents). Viviano argues the circuit court erred in (1) finding a memorandum of understanding (the Memorandum) that the parties and their counsel executed following a two-day mediation is an enforceable settlement agreement and (2) failing to rule on his argument that the Memorandum is invalid due to fraud. We affirm the well-reasoned order of the circuit court.

**Facts and Procedural History**

This case arises from a dispute over the location of an easement for a pedestrian and equestrian trail (the Trail) in Braeloch, an Aiken County subdivision (the Subdivision) governed by the Braeloch Homeowner's Association (HOA). The Amended Covenants and Access Agreements for the Subdivision (the Covenants) created the Trail "around the perimeter of the development" as reflected on an attached plat. The Covenants established a twenty-foot easement along the rear of perimeter properties, with fifteen feet for utilities and drainage, and clarified, "If there is any conflict between easements set forth in these restrictions and those shown on the plat, the easements shown on the plat shall control."

As initially developed, Lots 47 and 49 were exterior lots along the Subdivision's perimeter and thus were encumbered by the Trail easement. The Covenants were amended in 2002, when the property at 183 Gadwall Lane (Lot 51), adjacent to Lots 47 and 49, was added to the Subdivision.[1] These amendments, along with the signatures of the HOA members approving them, were recorded in Aiken County.

---

[1] Fulton Jeffers purchased Lot 51 in 2012; he often crossed Lot 49 to access a barn.

Lot 51 lies along the southern and southeastern borders of the Subdivision. Prior to Lot 51's inclusion, Lots 47 and 49 were located on the eastern and southern edges, but even after the Lot 51's addition, Subdivision homeowners continued to use the Trail easements on Lots 47 and 49. In 2018, Plaintiffs Richard Viviano and Johnette Gunter, owners of Lot 47 and Lot 49, filed this action against Jeffers and the HOA, seeking injunctive relief to prohibit Jeffers from using their property to access the Trail and to order that the Trail easement be relocated to the Subdivision perimeter now situated at Lot 51's boundary.

In 2020, Plaintiffs amended their complaint to add as defendants former HOA Board members Sandy Carroll and Derrick Boddy. Plaintiffs claimed the HOA defendants should have relocated the Trail easements to perimeter Lot 51 but Carroll and Boddy declined to record a new plat depicting the relocated Trail easement due to their friendships with Lot 51's prior owners. Plaintiffs further alleged Carroll and Boddy conspired with Jeffers to selectively enforce certain covenants and to oppose their plans for construction improvements on their lots. Finally, Plaintiffs claimed Jeffers and other HOA members entered their property without permission and the HOA improperly installed barriers interfering with the use and enjoyment of their properties.

On March 30 and May 25, 2022, the parties mediated this matter with retired circuit court judge Thomas W. Cooper, Jr. The mediation results report provides the case was "Fully Settled SUBJECT TO approval by the HOA and in accord with terms of the Memorandum of Understanding signed by the parties on May 25, 2022." In his report, Judge Cooper sagely commented,

> This case was complicated by legal and factual issues and by personality conflicts which either had developed during the litigation, or were, in part, the cause of the litigation. The lawyers had the difficult tasks of zealously advocating their clients' causes while fashioning a resolution that was acceptable to the other side(s). (There were more than two sides to this conundrum.) This settlement is a testament to the determination and imagination of the lawyers and the recognition of their clients that emotion has to give way to reason to resolve difficult disputes.

The Memorandum, signed by the parties and their counsel, states:

The Parties, having come to a proposed settlement in Mediation agree to settle all claims in the above-captioned action subject to the terms in this agreement that require further action:

1. The 20' equestrian/pedestrian easement which is located along the back perimeter of Lot 47 shall be altered as follows:
    a. The easement shall be reduced from 20' to 15' in width.
    b. 10' of the easement shall be moved from lot 47 to Lot 51
    c. The alteration shall be effective for the entirety of the property line of Lot 47.

2. Defendant Fulton Jeffers shall receive payment in the amount of $20,000 which shall represent payment for the burden placed on his property.

3. The HOA agrees to remove/release the 10' access easement described in the covenants between lots 48 and 49 (the Lee/Santos Easement).

4. The HOA will pay for and clear whatever portion of the equestrian/pedestrian easement now moved and located on Lot 51 that is deemed by the HOA necessary for its proper use as an equestrian easement.

5. The HOA will present for a vote to the members of the HOA whether to improve an existing access easement between lots 18,19, 20 & Lot 49, the outcome of which will not [a]ffect the enforceability of this settlement.

6. The parties will sign a non-waiver agreement agreeing that the settlement does not create a waiver of the enforcement of the covenants.

7. The parties will enter into a mutual non-disparagement agreement.

8. This settlement is contingent upon the HOA getting homeowner approval of their obligations under Paragraphs 1 and 3 of this memorandum.

9. Full and final release of all claims by Plaintiffs against Sandra Carroll and Derrick Boddy.

10. The HOA shall pay for and prepare all surveys, plats documents and costs with filing.

11. All parties shall bear their own attorney fees and costs.

12. Full and final settlement agreement to be drafted by Mary LaFave.

13. The HOA shall bring the matter to a vote of the members within [60] days of the signed release.

On June 30, 2022, the HOA presented the settlement Memorandum to its members for a vote and received the votes necessary to approve the settlement and Memorandum obligations.  Even Viviano voted in approval.

On March 20, 2023, Plaintiffs' prior counsel emailed Respondents' counsel, stating, "I have the go ahead for the settlement.  [Let's] get the signatures together.  I have my client sending the signatures to 'hold' until we have them all.  [Let's] get this done."  On March 22, 2023, Jeffers signed the settlement and release.  Boddy signed on April 5, 2023, and the HOA President signed on May 4, 2023.

Upon Plaintiffs' motion, the circuit court relieved their prior counsel on April 3, 2023.  Two weeks later, on April 18, Respondents' counsel contacted Plaintiffs' new counsel and requested that Plaintiffs execute the release pursuant to the terms agreed upon at mediation and detailed in the Memorandum.  But on April 24, Plaintiffs' new counsel responded that he could not advise Plaintiffs to sign the release because Lot 51 was not properly annexed into the Subdivision in 2002, and Jeffers was thus not entitled to access the Trail.  Counsel further claimed the Memorandum was "void" due to "the fraudulent concealment of vital information" because Respondents knew there were insufficient signatures to admit Lot 51.

On May 2, Plaintiffs' counsel again indicated he could not advise his clients to sign the release.  That same day, Respondents jointly filed a motion to enforce the settlement.  Plaintiffs timely replied, arguing the Memorandum was not an enforceable settlement agreement.

Following a hearing, the circuit court granted the motion to enforce the settlement.  In its formal order, the circuit court found the Memorandum contained all material elements of a contract—an offer, acceptance, and consideration—and there was no identifiable misunderstanding as to its terms.  The circuit court further found the only material contingency identified in the Memorandum was HOA approval, and this contingency was satisfied by the HOA's 2022 vote.  No evidence established Plaintiffs withdrew their consent prior to the approval vote.  Finally, the circuit court explained the Memorandum was executed following mediation, the mediator

filed the ADR statement indicating the case had been settled, and the requirements of Rule 43(k) had been met.

Plaintiffs filed a Rule 59(e), SCRCP, motion to alter or amend and later submitted Viviano's supplemental affidavit with attached exhibits.  The circuit court denied the Rule 59(e) motion on January 10, 2024, and Viviano timely appealed.

**Standard of Review**

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009).  "An action to construe a contract is an action at law reviewable under an 'any evidence' standard."  *Miller Constr. Co., LLC v. PC Constr. of Greenwood, Inc.*, 418 S.C. 186, 195, 791 S.E.2d 321, 326 (Ct. App. 2016) (quoting *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001)).

**Analysis**

**I.  Documentation Related to Lot 51's Admission was Provided in Discovery, Recorded with the County, and Attached with Plaintiffs' Complaint**

Viviano contends he would not have signed the Memorandum had he known there were insufficient signatures to admit Lot 51 in 2002.  He asserts Respondents knew there were insufficient signatures and their "concealment" of such was material.[2]  Viviano argues the circuit court's failure to address his claim that the Memorandum was unenforceable due to this "fraud" requires that we reverse the order enforcing the settlement and remand the case to circuit court.  We disagree.

Initially, we note the circuit court properly declined to address the affidavit and other materials first provided in connection with Viviano's Rule 59(e) motion.  *See Spreeuw v. Barker*, 385 S.C. 45, 68-69, 682 S.E.2d 843, 855 (Ct. App. 2009) (finding this court could not consider on appeal a document submitted in family

---

[2] In raising this claim, Viviano relies on a 2019 email from Boddy acknowledging the petition to admit Lot 51 in 2002 contained insufficient signatures.  But, as Respondents' counsel noted at oral argument, a copy of this email was Bates-stamped and produced in discovery over two years before the parties mediated this matter and memorialized their settlement in accordance with Rule 43(k), SCRCP.

court only as an attachment to the party's Rule 59(e) motion); *Hickman v. Hickman*, 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct. App. 1990) ("A party cannot use Rule 59(e) to present to the court an issue the party could have raised prior to judgment but did not.").

Moreover, Vivano's argument that the settlement Memorandum is unenforceable due to some claimed "concealment" or "fraud" is meritless.

> In order to establish a claim for fraud in the inducement to enter a contract, a party must establish the following by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Turner v. Milliman*, 392 S.C. 116, 122, 708 S.E.2d 766, 769 (2011). "Absent fraud or mistake, where attorneys of record for a party agree to settle a case, the party cannot later repudiate the settlement." *Arnold v. Yarborough*, 281 S.C. 570, 572, 316 S.E.2d 416, 417 (Ct. App. 1984).

> It is the policy of the courts not only to discourage fraud, but also to discourage negligence and inattention to one's own interests. Courts do not sit for the purpose of relieving parties who refuse to exercise reasonable diligence or discretion to protect their own interests. A party must avail himself of the knowledge or means of knowledge open to him. The court will not protect the person who, with full opportunity to do so, will not protect himself.

*King v. Oxford*, 282 S.C. 307, 312, 318 S.E.2d 125, 128 (Ct. App. 1984) (internal citations omitted).

Plaintiffs alleged in their 2020 amended complaint that "around August of 2002, two-thirds of the members of the Defendant HOA approved [the prior owners'] petition to join the Defendant HOA and their property, Lot 51, became subject to the same covenants, encumbrances, and easements stated in [the Covenants]." To

their pleading, Plaintiffs attached documents pertinent to Lot 51's admission, but Viviano only now claims insufficient signatures were gathered for Lot 51's proper admission. Because Plaintiffs were in possession of the documentation relevant to Lot 51's admission to the Subdivision for over two years prior to the mediation and settlement, Viviano may not now properly argue Respondents withheld or somehow concealed material information.[3]

Also relevant to our analysis is the fact that Viviano did not raise the propriety of Lot 51's admission in any pleading in the underlying litigation. The appropriate avenue for seeking a ruling on the legality of Lot 51's admission would have been through the filing of a declaratory judgment action, or perhaps an amendment to the complaint. *See, e.g.,* S.C. Code Ann. § 15-53-20 (Supp. 2024) ("Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed."); S.C. Code Ann 15-53-120 (Supp. 2024) ("Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith.").

We see no evidence in the record that Viviano (or anyone else) sought a declaration addressing the propriety of Lot 51's admission to the Subdivision. Because determination of this question was beyond the scope of the circuit court's review, the circuit court appropriately declined to address it.

## II. Enforceability of the Memorandum Settlement Agreement

Viviano next argues the circuit court erred in finding the settlement Memorandum was enforceable because it is not the final document requiring HOA approval. Again, we disagree.

---

[3] Respondents' argument before the circuit court addressing "the allegation that there was hidden evidence, bad faith, or somehow some fraudulent representation" perhaps best sums up the belated nature of Appellant's claim. Respondents' counsel explained, "And I will chalk that up to [new counsel's] late entry into this case since what he believes or asserts to this court was misrepresented was actually attached to the complaint filed on September 21, 2018."

Rule 43(k), SCRCP provides, in pertinent part:

> No agreement between counsel affecting the proceedings
> in an action shall be binding unless reduced to the form
> of a consent order or written stipulation signed by
> counsel and entered in the record, or unless made in open
> court and noted upon the record, or reduced to writing
> and signed by the parties and their counsel.

The rule works to "prevent fraudulent claims of oral stipulations, and to prevent disputes as to the existence and terms of agreements and to relieve the court of the necessity of determining such disputes, which it has been said are often more perplexing than the case itself." *Ashfort Corp. v. Palmetto Const. Grp., Inc.*, 318 S.C. 492, 495, 458 S.E.2d 533, 535 (1995) (quoting 83 C.J.S. Stipulations § 4 (1953)). A trial court "retains inherent jurisdiction and power to enforce agreements entered into in settlement of litigation before that court." *Kinghorn as Tr. for the Mildred Ann Kinghorn Tr. dated 28 Apr. 2004 v. Sakakini*, 426 S.C. 147, 152, 825 S.E.2d 748, 750 (Ct. App. 2019) (quoting *Rock Smith Chevrolet, Inc. v. Smith*, 309 S.C. 91, 93, 419 S.E.2d 841, 842 (Ct. App. 1992)). Our supreme court has explained that where Rule 43(k) applies, "its terms are mandatory, which precludes a party from turning to contract or equitable principles (or counter public policy arguments) to vitiate those terms." *S.C. Hum. Affs. Comm'n v. Zeyi Chen*, 430 S.C. 509, 521, 846 S.E.2d 861, 867 (2020).

Here, the circuit court properly enforced the parties' settlement because Rule 43(k) governs, and the only material contingency remaining was HOA approval. A majority of HOA members—including Viviano—approved the settlement. Yet, Viviano now contends that because the release and non-disparagement agreement have not been executed, all settlement contingencies have not been met. But, unlike the HOA approval addressed in the Memorandum, the terms of these documents are not identified as material contingencies. Perhaps more importantly, Viviano fails to persuasively describe how their language might be material to the settlement of the claims raised in the complaint and addressed at mediation. Accordingly, the circuit court did not err in finding the Memorandum's remaining material contingency had been satisfied or in enforcing the settlement.

For these reasons, the order of the circuit court is

**AFFIRMED.**

**KONDUROS and VINSON, JJ., concur.**